UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Infinity Products, Inc.,

Plaintiff,

v.

Premier Plastics, LLC, and
Prodesign, Inc.,

Defendants.

Civ. File No. 00-36 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Motions for Summary Judgment filed by Defendants Premier Plastics, LLC, and Prodesign, Inc. For the reasons that follow, the Court grants in part and denies in part the Motions.

**BACKGROUND**

Plaintiff Infinity Products, Inc. ("Infinity") assembles and markets vacuum-formed molded plastic parts for automobile interiors, including dash kits, overhead consoles, floor consoles, and arm rests. These parts are used primarily in the manufacturing and after-market industries for the customization of vans, trucks, and sport-utility vehicles. Defendant Premier Plastics, LLC ("Premier") manufactures these parts. In September and November 1998, Infinity and Premier entered into two Joint Sales Agreements ("JSA")[1] that provided that, for three years, Premier would manufacture parts exclusively for Infinity, and Infinity

---

[1] The two JSAs were substantially the same. For the purposes of these Motions the relevant JSA was signed in November 1998. (Pl.'s Ex. 41.)

FILED JUL 20 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

would market only Premier's parts. Because the manufacture of these parts requires specialized tools, the JSA also provided that the parties would contribute money to a joint bank account, and that this money would be used for the purchase of tools which would be jointly owned by Infinity and Premier.

In January 1999, Coachmen Industries, Inc. ("Coachmen") purchased the assets of Premier. Coachmen is also the parent company of Defendant Prodesign, Inc. ("Prodesign"), and shortly after Coachmen purchased Premier, Premier and Prodesign were effectively merged. Premier's President, Richard Grise, became Vice President of Premier for the Prodesign/Premier division of Coachmen. After the sale, Prodesign/Premier continued to supply parts to Infinity.

Although the facts are at times difficult to discern from the parties' briefs, it appears that the business relationship between Infinity and Prodesign/Premier began to sour in February 1999. According to Infinity, Infinity learned that Premier was using the jointly owned tools to manufacture parts for other customers, in violation of the JSA. Eventually, Infinity paid Premier for the entire cost of the tools, and several months later traveled to Premier's plant in Indiana to repossess the tools. Infinity then brought this lawsuit, claiming that Premier and Prodesign breached the parties' contract.

The Complaint states ten claims for relief. Five of the claims are for alleged breaches of the JSA. Specifically, Infinity alleges that Premier and Prodesign violated the JSA by failing to pay their share for the jointly owned tools, charging Infinity more for the parts than

specified by the JSA, selling parts to other customers, and selling the jointly owned tools to Coachmen. Infinity raises two common law fraud claims, based on Defendants' alleged failure to disclose both the overcharges to Infinity and the fact that Defendants were selling parts to other customers and using the tools to make parts for other customers. The Complaint also contains two claims for conversion, claiming that Defendants wrongfully converted one-half the cost of the jointly owned tools, and that Defendants wrongfully converted the value of the tools by using them to make parts for other customers. Finally, Infinity sought relief under the Indiana Deceptive Consumer Sales Act, but has voluntarily dismissed that claim. (Pl.'s Opp'n Mem. at 42.) Defendants have moved separately for summary judgment on each of Infinity's remaining claims.

## DISCUSSION

### A. Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986); Krenik, 47 F.3d at 957. The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

**B. Choice of Law**

The JSA provides that Indiana law will be the "prevailing law." (Pl.'s Ex. 41 ¶ 13.) The parties all acknowledge that Indiana law applies to the breach of contract and common law fraud claims. (Premier's Supp. Mem. at 18 n.3; Prodesign's Supp. Mem. at 7; Pl.'s Opp'n Mem. at 23 n.188.[2]) Infinity and Premier agree that Indiana law also applies to the conversion claims, but Prodesign argues that Minnesota law applies to those claims. (Prodesign's Supp. Mem. at 7.) However, as Prodesign admits, there is no conflict between the substantive law of conversion in Minnesota and Indiana. (Id.) Prodesign argues that when there is no conflict, the Court should apply the law of the forum. Because there is no conflict, it is of no moment which state's law is applied to Infinity's conversion claims. Thus, the Court will apply Indiana law to all of Infinity's claims.

Similarly, the parties do not dispute that, because the JSA primarily involved the sale of goods, the Indiana Uniform Commercial Code ("U.C.C.") applies. Moridge Mfg. Co. v.

---

[2] Infinity's opposition memorandum contains 282 footnotes. Most of these footnotes are citations to the record or to relevant caselaw. According to the Bluebook, Practitioner's Rule P.2, a citation in a legal memorandum should be made either as a clause in the textual sentence or as its own sentence, and should not be placed in a footnote. The Court notes that Infinity was given leave to exceed the memorandum page limitations by fifteen pages. Fifty pages should have been sufficient to include citations within the text.

Butler, 451 N.E.2d 677, 679 (Ind. Ct. App. 1983); Ind. Code § 26-1-2-102.

### C. Breach of Contract

As noted above, Infinity claims that Premier and Prodesign breached the JSA in various ways: (1) by failing to pay their one-half share of the price of the jointly owned tools; (2) by charging Infinity more for the parts than the JSA specified; (3) by selling parts to customers other than Infinity; and (4) by selling the tools to Coachmen without Infinity's permission. Defendants respond that (1) Infinity breached the JSA by buying parts from other suppliers almost immediately after the JSA was signed, thus allowing Premier to cancel the JSA; (2) there was no meeting of the minds with regard to the exclusivity provision of the JSA and therefore there was no binding contract between the parties; and (3) the JSA terminated when Premier was sold to Coachmen. Prodesign also argues that it did not acquire the JSA in the purchase of Premier's assets, so Prodesign cannot be bound to the terms of the JSA and cannot be liable for any alleged breach.[3]

#### 1. Infinity's Breach

Premier argues that it was entitled to cancel the JSA because Infinity breached the contract first, and thus that Infinity's breach of contract claims fail. Although Premier may

---

[3] Defendants raise several other arguments in support of their Motions. For example, Premier contends that summary judgment should be granted because Infinity failed to mitigate its damages as required by the Indiana U.C.C. This issue is certainly not dispositive of all of Infinity's contract claims, and in any event is not amenable to resolution on summary judgment. See Ind. Code § 26-1-2-712, cmt. 2 ("The test of proper cover is whether at the time and place the buyer acted in good faith and in a reasonable manner."). The Court finds that Defendants' other arguments are similarly deficient and do not merit discussion in the text.

be correct that it could have canceled the JSA after learning of Infinity's admitted breach, it did not do so. The evidence taken in the light most favorable to Infinity shows that Infinity informed Premier that Infinity would purchase parts from other suppliers, and that Premier continued to operate under the JSA after learning this information. Premier did not institute its own lawsuit for breach of contract, and did not raise a counterclaim to that effect here. Thus, whether Premier was theoretically entitled to cancel the JSA is not relevant to the disposition of Infinity's claims.

Assuming that Premier also contends that the JSA was somehow terminated by reason of Infinity's breach, questions of fact preclude summary judgment on this issue. According to Infinity, because Premier continued to operate under the JSA after learning of Infinity's breach, the parties impliedly modified the exclusivity provision of the JSA to allow Infinity to purchase parts from others. The JSA allows for modification "upon the agreement of both parties." (Pl.'s Ex. 41 ¶ 14.) Whether the JSA was modified, however, is a question of fact rendering summary judgment inappropriate. Farm Equip. Store, Inc. v. White Farm Equip. Co., 596 N.E.2d 274, 277 (Ind. Ct. App. 1992).

The parties spend many pages arguing about whether Indiana's statute of frauds, Ind. Code § 26-1-2-201, precludes any oral modification of the JSA. The Court cannot make a determination on this issue because, as noted above, whether there was a modification is a question of fact. Should the jury decide that the parties did intend to modify the JSA, Premier or Prodesign may raise the statute of frauds issue at that time.

2. Meeting of Minds

Premier next asserts that Infinity's breach of the exclusivity provision shows that there was no meeting of the minds as to exclusivity, and thus that there was no enforceable contract. Premier essentially asks the Court to determine the parties' intent at the time Infinity breached the JSA. It is well settled that such a determination is a question of fact for the jury to decide. Polus v. Conner, 176 N.E. 234, 234 (Ind. Ct. App. 1931). The Court may not resolve this issue on a motion for summary judgment.

3. Premier's Sale

Finally, Premier contends that the JSA terminated when Coachmen bought Premier's assets in January 1999. On its face, this argument is attractive because the JSA specifically provides that it is terminated on the "Bill of Sale . . . by either party." (Pl.'s Ex. 41 ¶ 12(a).) However, as discussed above, Infinity's evidence shows that Premier and Prodesign continued to operate pursuant to the terms of the JSA for almost one year following the sale. Thus, as Infinity argues, there is a question of fact as to whether, even if the JSA terminated on Premier's sale, the parties impliedly created another contract with the same terms as the JSA by continuing to perform under those terms.

4. Prodesign

Prodesign claims that it cannot be liable for any alleged breaches of the JSA because it was not a party to the JSA, and it did not acquire the JSA when Coachmen bought Premier. Infinity responds that Prodesign ratified or impliedly adopted the JSA through the actions of

Grise, and that Prodesign continued to act in accordance with the JSA's terms for months after it purchased Premier. Whether the conduct of Premier and Prodesign constituted a ratification of the JSA is a question of fact. See Sotelo v. Indiana State Prison, 850 F.2d 1244, 1254 (7th Cir. 1988). Thus, summary judgment is inappropriate on this issue. Moreover, if the jury determines that Prodesign did ratify or adopt the JSA, then it is of no moment whether Prodesign acquired the JSA in the asset sale. Defendants' Motions for Summary Judgment on Infinity's breach of contract claims are denied.

**D. Fraud**

Infinity also asserts claims for fraud arising from Premier and Prodesign's alleged omissions or failures to disclose that they were overcharging Infinity for the parts and selling parts to third parties in violation of the JSA. Under Indiana law, Infinity may not recover for fraud arising out of a breach of contract. Epperly v. Johnson, 734 N.E.2d 1066, 1072 (Ind. Ct. App. 2000) (finding that the fraud claim founded on misrepresentation was "merely a breach of the parties' oral contract" and was not independently actionable). Infinity's third claim for relief alleges that Defendants breached the JSA by overcharging Infinity for parts, and the fourth claim for relief alleges that Defendants fraudulently failed to disclose these overcharges. Similarly, Infinity's sixth and seventh claims for relief allege that Defendants breached the JSA by selling parts to others, while the eighth claim for relief contends that Defendants fraudulently concealed these sales. Thus, the misrepresentations or omissions alleged to constitute fraud are mere breaches of the JSA, and are not independently

actionable. Infinity's fraud claims must be dismissed.

**E. Conversion**

Like the fraud claims, Infinity's conversion claims are mere restatements of its breach of contract claims. Infinity alleges in its first claim for relief that Defendants breached the JSA by failing to pay their one-half share of the jointly owned tools. The second claim for relief contends that Defendants wrongfully converted one-half the value of the tools by failing to pay their share. Infinity's sixth and seventh claims for relief allege that Defendants breached the JSA by selling parts to others, and the ninth claim for relief asserts that, in manufacturing parts for and selling parts to other customers, Defendants "wrongfully benefitted from the use of the Tools at the expense of Infinity." (Compl. ¶ 82.) Indiana courts have not directly addressed the question of whether conversion claims arising out of breach of contract are independently actionable. However, in this case, Infinity's conversion claims are so closely related to its fraud claims, and in turn are so closely related to its breach of contract claims, that this Court concludes that Indiana courts would find that Infinity's conversion claims are not independently actionable. See Lachmund v. ADM Investor Servs., Inc., 26 F. Supp. 2d 1107, 1115 (N.D. Ind. 1998) (stating that "[t]he economic loss doctrine prevents the circumvention of the Uniform Commercial Code ("UCC") by plaintiffs pursuing tort claims for what would otherwise amount to a breach of contract between merchants of goods," but refusing to speculate on whether economic loss doctrine applied to plaintiff's Indiana tort claims), aff'd, 191 F.3d 777 (7th Cir. 1999). Infinity's conversion claims must

be dismissed.

**CONCLUSION**

For the foregoing reasons, and based upon all the files, records, and proceedings herein, the Court grants in part and denies in part Defendants' Motions. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions for Summary Judgment (Clerk Doc. Nos. 79 and 84) are **GRANTED IN PART** and **DENIED IN PART**;
2. Defendants' Motions for Summary Judgment on Plaintiff's claims for breach of contract are **DENIED**;
3. Defendants' Motions for Summary Judgment on Plaintiff's claims for conversion and common law fraud are **GRANTED**; and
4. Because Plaintiff voluntarily dismisses its claim for a violation of the Indiana Deceptive Consumer Sales Act, Defendants' Motions on this claim are **DENIED AS MOOT**.

Dated: July 20, 2001

Paul A. Magnuson
United States District Court Judge

**Please forward this announcement to the recipient of this fax.**

---

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500