UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Infinity Products, Inc.,

Plaintiff,

v.

Premier Plastics, LLC, and
Prodesign, Inc.,

Defendants.

Civ. File No. 00-36 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on two Motions in Limine filed by Defendants Premier Plastics, LLC ("Premier") and Prodesign. Inc. ("Prodesign"), four Motions in Limine filed by Defendant Prodesign, and one Motion in Limine filed by Defendant Premier. For the reasons that follow, all seven Motions are denied.

**BACKGROUND**

This case is essentially a contract dispute arising out of a Joint Sales Agreement ("JSA") between Plaintiff Infinity Products, Inc. ("Infinity") and Defendants. The JSA provided that, for three years, Premier would manufacture parts exclusively for Infinity, and Infinity would market only Premier's parts. Allegedly, Prodesign and Premier breached the JSA by manufacturing and selling parts to other customers.

**DISCUSSION**

**A. Defendants' Motion to Exclude Evidence Barred by the Statute of Frauds**

In this Motion, Defendants argue that Infinity should not be allowed to present any

FILED AUG 22 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.____
DEPUTY CLERK____

evidence regarding oral agreements or oral modifications to the JSA. Premier and Prodesign are, in effect, attempting to resurrect the Statute of Frauds argument that this Court rejected when it denied Defendants' Summary Judgment Motion. In denying Summary Judgment, this Court specifically held that it could not "make a determination on [the statute of frauds issue] because...whether there was a modification is a question of fact. Should the jury decide that the parties did intend to modify the JSA, Premier or Prodesign may raise the statute of frauds issue at that time." July 20, 2001 Memorandum and Order at 6. Because the issue of modification is one of fact, Infinity should be allowed to present evidence relating to modification. Accordingly, this Motion is denied.

**B. Defendants' Motion to Exclude Testimony Regarding Defects**

Defendants seek to exclude evidence relating to the quality of the products that they manufactured. Ostensibly this evidence would be irrelevant under Fed. R. Evid. 401 and 402, because it has nothing to do with whether or not Infinity breached the exclusivity provision of the JSA. Defendants suggest that this evidence would only be relevant if Infinity had filed a claim against Defendants for failing to provide a good product. Additionally, Defendants contend that evidence relating to the quality of the products that they manufactured for Infinity should be excluded as prejudicial under Fed. R. Evid. 403. Finally, Defendants once again attempt to revivify their Statute of Frauds argument. Defendants want to prevent Infinity from using evidence of the quality of Defendants' parts to prove that Defendants breached the allegedly modified JSA first.

Infinity responds by continuing the Statute of Frauds debate that this Court has ruled is postponed until the jury determines whether or not the parties intended to modify the JSA. See July 20, 2001, Memorandum and Order at 6. Infinity then argues that evidence of the poor quality of the Defendants' parts tends to prove that a modification of the JSA allowing Infinity to purchase parts from other manufacturers was reasonable. Finally, Infinity argues that this evidence is relevant despite the fact that Infinity has made no claims against Premier and Prodesign for manufacturing poor quality parts. The Court agrees. Such evidence is relevant both because it relates to the likelihood of modification and because it relates to the Defendants' affirmative defense that Infinity breached the JSA first.

Contrary to the Defendants' argument, the probative value of evidence relating to the quality of the parts that Defendants sold to Infinity is not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403 (emphasis added). As the Advisory Committee Note points out, "'unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403 advisory committee's note. Consistent with the requirement that the overbalance must be substantial, the Eight Circuit has held that "[i]n weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." United States v. Dennis, 625 F. 2d 782, 797 (8th Cir. 1980) (citing United States v. Day, 591 F. 2d 861, 878 (D.C. Cir. 1978)). In this case, any potential for unfair prejudice is slight and, in any event, certainly does not outweigh the probative value

of the evidence. Accordingly, Defendants' Motion is denied.

### C. Prodesign's Motion Regarding Baldwin Departure and Reputation of Coachmen

Prodesign broadly seeks to exclude all evidence and mention of certain statements made by Dick Baldwin relating to the reputation of Coachmen Industries, Inc. ("Coachmen"). Prodesign is wholly owned by Coachmen, but as Prodesign points out, Coachmen is not a party to this case. Prodesign also seeks to exclude any mention of the motivations or character of Coachmen or Prodesign at any time during the trial of this case. Prodesign argues that Baldwin's statements are irrelevant, unsupported opinion, inadmissable hearsay, and inflammatory. Infinity responds that Baldwin's testimony is relevant because it assists Infinity establish facts related to claimed damages and it relates to defensive allegations raised by Prodesign.

This Court is reluctant to grant broad motions in limine. As other courts have stated, the "better practice is to deal with questions of admissibility of evidence as they arise." Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). This is especially appropriate when the motions turn on facts to be developed at trial. See Deghand v. WalMart Stores, Inc., 980 F.Supp. 1176, 1179-80 (D. Kan. 1997). In this case, it is premature to determine whether evidence of Baldwin's statements is irrelevant or otherwise inadmissable. Likewise, although the Court has doubts about the admissibility of evidence related to the character of Coachmen or Prodesign, individual determinations of admissibility

can be made more appropriately during the trial of this case. Accordingly, Prodesign's Motion is denied.

**D. Prodesign's Motion Regarding Company Size**

Prodesign also wants to exclude any reference to Coachmen and any reference to the relative size between Infinity and Prodesign. Prodesign argues that any such references are wholly irrelevant to the alleged breach of the JSA and therefore are excludable under Fed. R. Evid. 401 and 402. Infinity responds by claiming that mention of Coachmen is relevant to negate Prodesign's defense that it did not know about the joint venture between Premier and Infinity at the time that Coachmen purchased Premier. Infinity claims that mention of Coachmen, the steps that Coachmen took before purchasing Premier, and the size and success of Coachmen tend to show that Coachmen and therefore Prodesign would have known about the JSA.

Again, individual determinations of the admissibility of particular references to Coachmen and the relative size of Prodesign and Infinity can be more appropriately made during the trial of this case. Accordingly, Prodesign's Motion is denied.

**E. Prodesign's Motion Regarding Prodesign and Coachmen's Knowledge of the JSA**

Along similar lines, Prodesign broadly asks that this Court bar Infinity from mentioning or referring to the due diligence efforts of either Coachmen or Prodesign and from otherwise offering speculation or opinion about whether Coachmen or Prodesign knew

of the JSA as a consequence of the purchase of the assets of Premier. Specifically, Prodesign argues that Craig Smith, the President of Infinity, should not be allowed to testify about whether Prodesign or Coachmen knew of the existence of the Joint Sales Agreement between Infinity and Premier. Such testimony, Prodesign claims, would be mere speculation and inadmissable for lack of personal knowledge. See Fed. R. Evid. 602. Prodesign concludes with the bald assertion that any testimony by Craig Smith relating to the veracity of Prodesign's President, Kevin Gipson is improper opinion testimony.

Infinity points out that Prodesign's request is substantially broader than its reasoning implies. Prodesign is effectively attempting to prohibit any mention of Coachmen or of the alleged knowledge of the JSA by Coachmen or Prodesign. Since this knowledge is a key issue in this case, Infinity should be allowed to present evidence relating to such knowledge. Particular admissibility issues can be dealt with during the trial of the case. Prodesign's Motion is denied.

### F. Prodesign's Motion to Exclude Fraud Evidence

In this Motion, Prodesign requests that Infinity be prohibited from mentioning or referring to the trustworthiness or veracity of Prodesign's representatives. Specifically, Prodesign seeks to exclude the statements of Craig Smith relating to the veracity and alleged deceit of Prodesign's representatives. Prodesign justifies this request for exclusion by noting that this Court dismissed Infinity's claims for fraud and conversion in its July 20, 2001, Memorandum and Order at 8-9. Infinity responds by pointing out that its fraud claims where

dismissed by this Court because "the misrepresentations or omissions alleged to constitute fraud are mere breaches of the JSA." July 20, 2001, Memorandum and Order at 8. This language, Infinity argues, demonstrates that evidence relating to the trustworthiness and veracity of Prodesign's representatives is relevant to Infinity's breach of contract claims. Furthermore, Infinity claims that such evidence is relevant to its breach of fiduciary duty claim against Prodesign and Premier.

As with the two previously discussed motions in limine by Prodesign, it is premature to rule on the admissibility of evidence relating to the trustworthiness or veracity of Prodesign's representatives. Certainly, in some potential circumstances such evidence would be inadmissable or excludable; however, it is not appropriate for this Court to try and predict how such evidence will actually be employed by Infinity. It should be noted, nevertheless, that this Court is somewhat dismayed by the fact that Infinity seems to be asserting a heretofore undiscussed breach of fiduciary duty claim in its response to Prodesign's Motion in Limine.

### G. Premier's Motion to Exclude Testimony About the Premier/Coachmen Asset Purchase Agreement

In this motion, Premier contends that certain evidence concerning the meaning of terms in the Premier/Coachmen Asset Purchase Agreement should be excluded from trial. Particularly, Premier argues that the testimonial evidence of witnesses not involved in the negotiation of this Agreement should be excluded because such witnesses do not have

personal knowledge regarding the meaning of terms in the Agreement. See Fed. R. Evid. 602. Infinity responds by attempting to establish that at least one witness who was not present at the negotiation of the Asset Purchase Agreement had personal knowledge about what the terms of that agreement where intended to mean.

Once again, it is more appropriate to deal with these evidentiary issues during the trial of this case. For that reason, Premier's Motion is denied.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Premier Plastics, LLC and Prodesign, Inc.'s Motions in Limine (Clerk Doc. Nos. 149 and 146) are **DENIED**;
2. Defendant Prodesign , Inc.'s Motions in Limine (Clerk Doc. Nos. 143, 147, 148, 145) are **DENIED**; and
3. Defendant Premier Plastics, Inc.'s Motion in Limine (Clerk Doc. No. 144) is **DENIED**.

Dated: August 20, 2001

Paul A. Magnuson
United States District Court Judge

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500