UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Infinity Products, Inc.,

Plaintiff,

v.

Premier Plastics, LLC, and
Prodesign, Inc.,

Defendants.

Civ. File No. 00-36 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on a Motion for Directed Verdict filed by Defendants Prodesign, Inc. ("Prodesign") and Premier Plastics, LLC ("Premier").[1] For the reasons that follow, the Motion is granted.

**BACKGROUND**

For the purposes of this Motion, it is not necessary to recount the convoluted and contentiously disputed facts of this case in detail. The relevant facts as presented during Infinity's case-in-chief establish that the case is essentially a contract dispute arising out of a Joint Sales Agreement ("JSA") between Plaintiff Infinity Products, Inc. and Premier. The JSA provided that, for three years, Premier would manufacture parts exclusively for Infinity, and Infinity would market only Premier's parts. Infinity claims that the JSA was orally

[1] Although Prodesign originally made the Motion, the issues that are raised by the Motion necessarily implicate both Defendants. Accordingly, the Court will address the Motion as though it were jointly filed.

FILED NOV 06 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD NOV 06 2001
DEPUTY CLERK

modified on a number of occasions, thereby allowing Infinity to purchase parts from other suppliers. Furthermore, Infinity claims that there were oral modifications to the JSA substituting Prodesign for Premier under the JSA and granting Infinity part ownership of certain tools used to make the parts at issue in this case.

Although Infinity did purchase parts from other suppliers on a number of occasions, it claims that it substantially performed all obligations required of it under the JSA as modified. Infinity alleges, however, that Premier and Prodesign breached the JSA in several ways: (1) by failing to pay their one-half share of the price of the jointly owned tools; (2) by charging Infinity more for the parts than the JSA specified; (3) by selling parts to customers other than Infinity; and (4) by selling the jointly owned tools without Infinity's permission.

During the summary judgment phase of this litigation, Defendants argued that Infinity's contract claims were precluded by the statute of frauds. This Court held that "[w]hether the JSA was modified . . . is a question of fact rendering summary judgment inappropriate. Farm Equip. Store, Inc. v. White Farm Equip. Co., 596 N.E.2d 274, 277 (Ind. Ct. App. 1992). . . . Should the jury decide that the parties did intend to modify the JSA, Premier or Prodesign may raise the statute of frauds issue at that time." See July 20, 2001, Memorandum and Order at 6.

At the close of Infinity's case-in-chief, Defendants moved for a directed verdict, or

judgment as a matter of law,[2] based upon the statute of frauds. The Court now grants the Motion.

## DISCUSSION

### A. Standard of Review

A district court should render judgment as a matter of law only when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a); see also Tatom v. Georgia-Pacific Corp., 228 F.3d 926, 931 (8th Cir. 2000). When considering a motion for judgment as a matter of law, a court must: (1) resolve all direct factual conflicts in favor of the non-movant; (2) assume as true all facts supporting the non-movant which the evidence tended to prove; (3) give the non-movant the benefit of all reasonable inferences; and (4) deny the motion if the evidence would allow reasonable jurors to differ as to the conclusions that could be drawn. See Boudreau v. Wal-Mart Stores, Inc., 249 F.3d 715, 717-18 (8th Cir. 2001) (citing Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 932 (8th Cir. 1999)). In brief, the standards for granting judgment as a matter of law are essentially the same as those for granting summary judgment. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1081 (8th Cir. 1999) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

---

[2] Because Fed. R. Civ. P. 50, as amended in 1991, discarded the traditional terms "directed verdict" and "judgment not withstanding the verdict" or "j.n.o.v." in favor of the single phrase "judgment as a matter of law," this Court will employ the terminology of the Rules in considering Defendants' Motion.

**B. Statute of Frauds**

The question before the Court is whether the oral modifications alleged by Infinity are precluded by the statute of frauds. If they are, Infinity's claims against both Defendants fail as a matter of law.

In this case, the JSA provides, and the parties agree, that Indiana law applies. Indiana has largely adopted the provisions of the Uniform Commercial Code ("U.C.C."). The U.C.C. section pertinent to this case provides that "[t]he requirements of the statute of frauds . . . must be satisfied if the contract as modified is within its provisions." Ind. Code § 26-1-2-209(3). The statute of frauds, in turn, states that

> a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Ind. Code § 26-1-2-201(1). The overarching goal of the statute of frauds is to "afford a basis for believing that the oral evidence rests on a real transaction." Pepsi-Cola Co. v. Steak 'n Shake, Inc., 981 F. Supp. 1149, 1158 (S.D. Ind. 1997).

Although Indiana courts have not interpreted the meaning of § 26-1-2-209(3), the Seventh Circuit determined that "Indiana would follow the majority of jurisdictions and hold that [an oral modification] needed to be in writing." Zemco Mfg., Inc. v. Navistar Int'l

Transp. Corp., 186 F.3d 815, 820 (7th Cir. 1999). In reaching this decision, the court in Zemco Mfg. noted that a substantial number of other jurisdictions, considering the identical U.C.C. provision, have held that if a contract originally falls within the ambit of the statute of frauds, every modification of that contract must also be in writing. See Zemco Mfg., 186 F.3d at 819 (citing Van Den Broeke v. Bellanca Aircraft Corp., 576 F.2d 582, 584 (5th Cir. 1978); Green Constr. Co. v. First Indem. of Am. Ins. Co., 735 F. Supp. 1254, 1261 (D.N.J. 1990); Leasing Serv. Corp v. Diamond Timber, Inc., 559 F.Supp. 972, 976-77 (S.D.N.Y. 1983); Cooley v. Big Horn Harvestore Sys., Inc., 767 P.2d 740, 744 (Colo. Ct. App. 1988), rev'd on other grounds, 813 P.2d 736 (Colo. 1991)). "The Indiana Commentary appears to agree [with this majority position]: 'Indiana cases seem to use a rather mechanical test–if the original contract had to be in writing then the modifying agreement must also.'" Zemco Mfg., 186 F.3d at 819 (citing Ind. Code § 26-1-2-209 Ind. cmt. 3)). This Court will follow the Seventh Circuit and hold that as a matter of Indiana law every modification of a contract which was originally within the statute of frauds must also satisfy the statute of frauds.

In this case, there are several modifications at issue. As a threshold matter, Infinity claims that the JSA was orally modified thereby allowing it to purchase parts from suppliers other than Premier. Defendants have argued that this oral modification was insufficient to satisfy the statute of frauds. Consequently, Defendants contend that when Infinity purchased

parts outside of the JSA, it materially breached and, pursuant to section 12(d) of the JSA,[3] terminated the JSA.[4]

Even assuming, however, that the JSA was not terminated, the parties agree that all of Infinity's claims against Defendants are based on two additional oral modifications of the JSA: (1) an oral agreement whereby Prodesign agreed to be substituted for Premier and to perform Premier's obligations under the JSA; and (2) an oral agreement granting Infinity part ownership of certain tools. Defendants contend that there are no writings sufficient to satisfy the statute of frauds for these oral modifications. Accordingly, Defendants argue that these oral modifications are insufficient, as a matter of law, to create a basis for recovery against them.

Infinity responds by arguing that (1) even if it breached the JSA, Defendants have waived this breach; (2) the statute of frauds is inapplicable because Infinity is seeking to enforce a contract with respect to parts for which payment has been made and accepted; (3) the statute of frauds is inapplicable because Defendants have admitted that a contract existed; (4) even if the statute of frauds applies, it is satisfied; and (5) even if the statue of frauds

[3] Section 12(d) provides that the JSA is considered terminated by the "[v]olation by either party of any or all parts of this agreement." (Compl. Ex. B).

[4] Defendants have made this argument at various times during the pendency of this litigation including during summary judgment. Although the Court was disinclined to grant summary judgment on the basis of this defense, subsequent briefing and oral arguments have made the meritoriousness of Defendants' arguments clear.

applies, Defendants should not be allowed to unfairly escape liability by asserting it in this case.

### 1. Waiver of Breach

Infinity claims that even if it breached the JSA, this breach was waived by Defendants' subsequent conduct. See Ind. Code § 26-1-2-209(4) ("Although an attempt at modification . . . does not satisfy the requirements of [the statute of frauds], it can operate as a waiver"). Specifically, Infinity claims that Defendants continued to perform under the JSA.

The Court disagrees. By the express terms of the JSA, the contract was terminated immediately on Infinity's breach. There was no opportunity for Defendants to waive the breach. The fact that Defendants continued to do business with Infinity pursuant to Infinity's purchase orders proves nothing more than the existence of individual sales transactions.

Even in the absence of an automatic termination clause in the JSA, it should be noted that courts generally take a dim view of attempts to waive the statute of frauds. See 1 William D. Hawkland, Uniform Commercial Code Series § 2-209:5 (2001) (noting that "[i]n the normal case . . . courts should be careful not to allow the protective features of section 2-209(2) and (3) to be nullified by contested parol evidence"); Wisconsin Knife Works v. Nat'l Metal Crafters, 781 F.2d 1280, 1286 (7th Cir. 1986) (stating that if section 2-209(4) is interpreted so broadly that any oral modification is effective as a waiver, then we are back in the common law only with not even a requirement of consideration to reduce the

likelihood of fabricated or unintended oral modifications). Accordingly, even in the absence of section 12(d) of the JSA, Infinity would need to adduce more evidence than it has that Defendants waived the statute of frauds for the alleged modification excusing Infinity's breach.

### 2. Exception for Payment Made and Accepted

Pursuant to U.C.C. § 2-201 an oral contract is taken out of the statute of frauds "with respect to goods for which payment has been made and accepted or which have been received and accepted." Ind. Code § 26-1-2-201(3)(c). Pointing to the fact that more than 140 of Infinity's purchase orders were filled by Prodesign, Infinity claims that it is suing to enforce a contract with respect to parts for which payment has been made and accepted. According to Infinity, these purchase orders affirmatively answer the legal question of whether a contract existed. All that remains, Infinity contends, is a factual determination of the terms of that contract.

The Court is unpersuaded by this argument. These purchase orders or individual sales transactions do not afford any basis for believing that the parties intended to orally modify the exclusivity provision of the JSA. Such orders or transactions reflect nothing more than "the quantity of goods shipped in each transaction." Eastern Dental Corp. v. Isaac Masel Co., Inc., 502 F. Supp. 1354, 1364 (E.D. Penn. 1980). Accordingly, the oral modification that

Infinity claims excuses its purchases of parts from other suppliers does not satisfy the statute of frauds. Infinity, therefore, breached and terminated the JSA.

Even if the JSA was not terminated by Infinity, however, section 2-201(3)(c) "expressly limits enforceability only to the apportionable part of goods" for which payment has been made and accepted. 1 James J. White and Robert S. Summers, Uniform Commercial Code § 2-5 (4th ed. 1995). In this case, none of Infinity's claims concern the parts for which payment was made and accepted. Infinity is claiming a variety of damages that could only arise from breaches of the JSA that are wholly independent from the sale of these parts. For instance, Infinity is claiming damages for sales made by Defendants outside of the JSA. Whether Defendants sold parts outside of the JSA does not relate in any way to the parts sold to Infinity. Similarly Infinity's claims for start-up costs, lost profits, overcharges, parts sold off of the allegedly jointly owned tools, re-engineering of the tools, and overpayment for the tools do not relate to these parts. Accordingly, the Court finds that the exception to the statute of frauds for payment for goods made and accepted does not apply in this case.

### 3. Exception for Admissions that the Contract Exists

Infinity also argues that the statute of frauds is inapplicable in this case because Defendants have admitted that they entered into contracts with Infinity. U.C.C. § 2-201 provides that the statute of frauds does not apply "if the party against whom enforcement is

sought admits in his pleading, testimony, or otherwise in court that a contract for sale is made, but the contract is not enforceable under this provision beyond the quantity of goods admitted." Ind. Code § 26-1-2-201(3)(b).

Again, Infinity's argument fails. It is worth noting that at least one court has reasoned that this exception to the statute of frauds can only apply to a modification if the modification is itself a contract for sale. See Hydrometals, Inc. v. Artsci, Inc., 1987 WL 8166, at *1 (N.D. Ill., Mar. 17, 1987) (stating that "it is irrelevant whether [plaintiff] admitted to the modification in its pleading because the alleged modification would be an assignment and not a 'contract for sale'"). According to this reasoning, when a modification is ancillary to a contract for sale, for instance when it defines the parties rights or obligations under the contract, this exception is unavailable.

In this case, it is unnecessary for the Court to determine whether such a hyper-technical reading of the statute is warranted. At the very least, this exception in the context of modifications requires that the party against whom enforcement is sought admit that the modification was made. Here, Defendants admit that they entered into 140 individual contracts with Infinity pursuant to Infinity's purchase orders. Defendants have never admitted that they agreed to the alleged oral modifications to the JSA. At most, Defendants' admissions bind them with regard to the parts sold pursuant to the purchase orders. As

already discussed, however, Infinity's claims do not arise from the sale of these parts. Accordingly, this exception to the statute of frauds does not apply in this case.

### 4. Satisfying the Statute of Frauds

Infinity argues that even if the statute of frauds applies, it is satisfied in this case by a number of separate documents. Infinity notes that the writing required by the statute of frauds "need not contain all the material terms of the contract and such material terms that are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." Steak 'n Shake, Inc., 981 F. Supp. at 1158; Ind. Code § 26-1-2-201(1), Ind. Cmt. 1. Infinity then points to the fact that more than 140 of Infinity's purchase orders for parts were filled by Prodesign at the same price as would have been required by the JSA. In light of Prodesign's admission that it could have sold these parts for 40-45% more, Infinity claims that these purchase orders are sufficient, in and of themselves, to show that Prodesign intended to substitute itself for Premier under the JSA. As additional support for its position, Infinity also argues that Exhibit 76, an example of Prodesign's vice-president applying a pricing formula that is identical to that used in the JSA, shows that Prodesign adopted the terms of the JSA and felt bound by these terms.

Infinity then contends that a letter stating that Prodesign would not use Infinity's tools and invoices which read "PARTS MADE THEIR TOOL" constitute writings sufficient to

satisfy the statute of frauds for an oral modification granting Infinity part ownership over certain tools.

The Court disagrees. Although the 140 purchase orders may indicate that the parties had an ongoing business relationship, they do not, expressly or by implication, evidence that there was a modification to the exclusivity provision of the JSA that would excuse Infinity's breach. Even if the JSA was not terminated by Infinity's breach, however, these purchase orders are insufficient both by themselves and in combination with Exhibit 76 to constitute evidence which affords a basis for believing that Prodesign intended to substitute itself for Premier under the JSA. The mere fact that Prodesign sold parts to Infinity at the same price, using the same pricing formula, as Premier had been required to do under the JSA does mean that Prodesign agreed to undertake all of the obligations and receive all of the benefits that Premier had under the JSA.

Additionally, the fact that Prodesign stated in a letter that it would not use Infinity's tools to produce parts for other customers does not provide evidence sufficient to satisfy the statute of frauds as to whether the parties modified their purported agreement and thereby granted Infinity part ownership of certain tools. Invoices which read "PARTS MADE THEIR TOOL" do not alter this conclusion.

### 5. Avoiding Inequitable Application

Infinity ends by arguing that the statute of frauds should not be applied unfairly so that a party escapes liability. See Pepsi-Cola Co. v. Steak 'n Shake, Inc., 981 F. Supp. 1149, 1159 (S.D. Ind. 1997) (quoting Advent Sys. Ltd. v. Unisys Corp., 925 F.2d 670, 677 (3d. Cir. 1991) ("Serious considerations . . . counsel courts to be careful in construing [the statute of fraud's] provisions so that undesirable rigidity does not result in injustice")). Infinity essentially contends that Defendants acted pursuant to and obtained the benefits of their contract with Infinity for approximately one year and should not be allowed to escape liability under that contract by reason of a legal technicality.

This Court disagrees. Defendants acted pursuant to and obtained the benefits from 140 individual contracts for the sale of parts to Infinity. Contrary to Infinity's argument, there is no evidence that Defendants received any additional benefits to which they would have been entitled had the parties continued to operate under the JSA. Accordingly, Defendants are not seeking benefits under the JSA while at the same time attempting to escape from liability under the JSA. No injustice results from an application of the statute of frauds in this case.

## CONCLUSION

The underlying purpose of the statute of frauds "is quite simply to preclude fraudulent claims which would probably arise when one person's word is pitted against another's and

which would open wide those ubiquitous flood-gates of litigation." Summerlot v. Summerlot, 408 N.E.2d 820, 828 (Ind. Ct. App. 1980). Although the statute of frauds is normally applied to determine whether a contract exists, the concern that one person's word could be pitted against another's thereby opening the door to potentially fraudulent claims is no less relevant to the determination of whether a contract modification exists. Consequently, Indiana law requires that any modification to a contract that was originally within the statute of frauds must also satisfy the statute. In this case, Infinity's claims are predicated on oral modifications that do not satisfy the statute of frauds.

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Directed Verdict is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 6, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995