UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Infinity Products, Inc., Civ. File No. 00-36 (PAM/RLE)

Plaintiff,

v. **MEMORANDUM AND ORDER**

Premier Plastics, LLC, and
Prodesign, Inc.,

Defendants.

---

This matter is before the Court on the conditional Motion of Defendant Prodesign, Inc. ("Prodesign") for new trial or remittitur. For the following reasons, the Court denies the Motion.

**BACKGROUND**

This case involves a contract dispute arising out of a Joint Sales Agreement ("JSA") between Plaintiff Infinity Products, Inc. and Premier Plastics, LLC ("Premier"). The JSA provided that, for three years, Premier would manufacture parts exclusively for Infinity, and Infinity would market only Premier's parts. Infinity claims that the JSA was orally modified a number of times to allow Infinity to purchase parts from other suppliers. Furthermore, Infinity claims that the JSA was modified to substitute Prodesign for Premier under the agreement and to grant Infinity part ownership of certain tools.

Although Infinity repeatedly purchased parts from other suppliers, it claims that it substantially performed all obligations required of it under the JSA as modified. Infinity alleges, however, that Premier and Prodesign breached the modified JSA in several material

FILED JUL 16 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

ways. Following Infinity's case-in-chief, Prodesign made a motion for judgment as a matter of law based on the statute of frauds. The Court took the motion under advisement, and the jury returned a verdict in favor of Infinity against Prodesign. The Court then granted Prodesign's motion for judgment as a matter of law. At this point, Prodesign filed the instant Motion which the Court denied without prejudice. Infinity appealed and the Eighth Circuit remanded the matter for the limited purpose of having the Court definitively rule on Prodesign's Conditional Motion for a New Trial or Remittitur.

**DISCUSSION**

A new trial should be granted only if the verdict was against the weight of the evidence and allowing it to stand would result in a miscarriage of justice. Moring v. Arkansas Dept. of Corr., 243 F.3d 452, 455 (8th Cir. 2001) (quoting Van Steenburgh v. The Rival Co., 171 F.3d 1155, 1160 (8th Cir. 1999)). On a motion for a new trial, the Court may interpret the evidence and judge the credibility of witnesses, but it may not usurp the role of the jury and grant a new trial merely because it believes other inferences and conclusions are more reasonable. White v. Pence, 961 F.2d 776, 780-81 (8th Cir. 1992). Occasionally, remittitur is an appropriate alternative to a new trial. See Parsons v. First Investors Corp., 122 F.3d 525, 529 (8th Cir. 1997). "A district court should grant remittitur only when the verdict is so grossly excessive as to shock the court's conscience." Norton v. Caremark, Inc., 20 F.3d 330, 340 (8th Cir. 1994) (quoting Am. Bus. Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1146 (8th Cir. 1986)).

Here, Prodesign argues that three errors made at trial entitle it to a new trial or at least to remittitur. First, Prodesign argues that Infinity's damages expert, Kenneth Ritterspach, should not have been allowed to testify because he did not meet the requirements of Daubert v. Merrell Down Pharm., 509 U.S. 579 (1993) and its progeny. To support this argument, Prodesign relies on a single objection made by Premier immediately after Mr. Ritterspach articulated his qualifications as an expert: "We do object for lack of foundation for this witness to serve as an expert witness." (Tr. at 547.) Although Prodesign cleverly suggests that this objection challenged not only Mr. Ritterspach's qualifications as an expert witness but also the methodological underpinnings of his findings, at the time the objection was made, Mr. Ritterspach had not yet articulated his methodology. Because no further relevant objections were made to Mr. Ritterspach's methodology, it is disingenuous to suggest that the Court erred by admitting unscientific evidence in violation of Daubert. In fact, Mr. Ritterspach did a through job of articulating the precise method that he used to calculate each category of damages. Prodesign and Premier had ample and repeated opportunity to object to this methodology but chose not to do so. See Cross v. Cleaver, 142 F.3d 1059, 1067 (8th Cir. 1998) (stating that where a party fails to make a timely and adequate objection, the issue will only be reviewed for "plain error"); Yannacopoulos v. Gen. Dynamics Corp., 75 F.3d 1298, 1304 (8th Cir. 1996) (stating that when a party waits until the end of a case to complain of errors, the objections are waived and the alleged errors only reviewed for plain error). On the face of the testimony, and in the absence of any objections

to the contrary, the Court correctly determined that Mr. Ritterspach's methodology was rigorous and scientific. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999) (requiring that the expert's opinion must be based on the same standard of "intellectual rigor" as he or she would use when dealing with similar matters outside of the courtroom).

At most, then, Premier's objection challenged only Mr. Ritterspach's qualifications to testify as an expert witness pursuant to Fed. R. Evid. 702. In substance, Prodesign suggests that because Mr. Ritterspach is not a certified public accountant or similar professional, he is not an expert within the meaning of Fed. R. Evid. 702. This argument places an unwarranted emphasis on credentials. A witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. In this case, Mr. Ritterspach has an M.B.A. and a Ph.D. from Stanford and has worked for more than 30 years in the business field for various companies in financial distress. Mr. Ritterspach's experience and particular knowledge of Infinity's business practices indisputably qualified him to render a expert opinion on damages in this matter.

Prodesign also complains that the jury's award of damages was flawed. The Court need not consider this contention at length. In large part, Prodesign merely argues that Mr. Ritterspach's testimony was flawed; however, as already mentioned, Prodesign failed to make any relevant objections to his testimony. Prodesign's belated attempt to undermine Mr. Ritterspach's testimony is nothing more than a veiled attempt to have the Court re-weigh the evidence. This the Court refuses to do. Prodesign's argument that there is no

substantive evidence supporting the jury's award of damages is similarly unavailing. The record reflects that there was an ample evidentiary basis for Mr. Ritterspach's testimony. If, however, Prodesign believed that some particular portion of his testimony was not supported by the evidence, it had opportunity to object during the course of the trial or to cross-examine Mr. Ritterspach on the issue. Likewise, to the extent that Prodesign believed that any particular category of damages was legally inappropriate, it should have objected during Mr. Ritterspach's testimony.

Prodesign's only potentially meritorious argument regarding the jury's award of damages is that the damages awarded for lost profits and parts sold off the allegedly jointly owned tools were inconsistent with other parts of the verdict. According to Prodesign, the jury's award for lost profits was inconsistent with the balance of the jury's verdict because Mr. Ritterspach admitted that damages for lost profits were dependent on Infinity's claim that it needed to build its own machine to manufacture the parts at issue in the case, but the jury awarded Infinity no damages for the supposedly necessary new machine. Prodesign interprets the jury's determination that Infinity sustained no damages by building its own machine as a finding that the machine was not actually needed. Thus, in Prodesign's estimation, the award of lost profits was inconsistent with the jury's own findings.

Contrary to Prodesign's suggestion, however, the jury's award of $0 for the new machine does not equal a finding that the new machine was unnecessary. As Infinity aptly points out, the jury's failure to award damages for the new machine might have merely

reflected the fact that Infinity was not damaged by building it because Infinity retains the possession and use of it. In any event, the Court is unwilling to make the leap of inferential faith required to find that the jury's award of lost profits was inconsistent with the jury's finding that Infinity sustained no damages in building the new machine.

Prodesign also argues that the jury's award of damages for parts sold off of the allegedly jointly owned tools is inconsistent with the jury's finding that Infinity sustained no damages for overcharges. Prodesign claims that the damages for parts sold off the tools were predicated Infinity's claim that the parts only cost $48 to manufacture. According to Prodesign the jury rejected this cost of manufacture by finding $0 in damages for overcharges. Once again, Prodesign's argument rests on the spurious supposition that a finding of no damages for overcharges necessarily means that the jury rejected Infinity's argument that the parts only cost $48 to manufacture. As Infinity points out, it is possible that the jury failed to award damages for overcharges because it agreed with one of Defendants' alternative defenses. In short, it is not the province of the Court to guess at meaning of the jury's finding of no damages. Accordingly, Prodesign's request for a new trial or for remittitur must be denied.

Prodesign's final argument that a new trial should be granted is simply that the Court erred by refusing to instruct the jury on the statute of frauds. As Infinity points out, Prodesign failed to object to the Court's decision not to include such an instruction and, therefore, waived this argument. Fed. R. Civ. P. 51.

For the foregoing reasons, the Court finds that Prodesign has failed to demonstrate that a new trial or remittitur is warranted. Accordingly, based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Prodesign's Conditional Rule 50 Motion for New Trial or Remittitur (Clerk Doc. No. 188) is **DENIED**.

Dated: July 15, 2002

Paul A. Magnuson
United States District Court Judge